AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Cellphone<br>Seizure No.2026250300020402 -0001<br>("Target Device 2") | )<br>)<br>)<br>)<br>)<br>)    Case No.   '26  MJ2919 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2, incorporated herein by reference.

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

❏ contraband, fruits of crime, or other items illegally possessed;

❏ property designed for use, intended for use, or used in committing a crime;

❏ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 USC Sec. 952 and 960 | Importation of a Controlled Substance |

The application is based on these facts:

See Attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.

❏ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Niza Gonzalez, HSI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means)*.

*Judge's signature*

Date:  May 14, 2026

City and state:  San Diego, California      Hon. Steve B. Chu, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A-2

PROPERTY TO BE SEARCHED

The following property is to be searched:

Cellphone
Seizure No. 2026250300020402-0001
(**"Target Device 2"**)

**Target Device 2** is currently in the possession of Homeland Security Investigations, located at 2051 N Waterman Ave, Suite 100, El Centro, California 92243.



**ATTACHMENT B**
ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of April 9, 2026, up to and including April 23, 2026:

a.   tending to indicate efforts to import controlled substances from Mexico into the United States;

b.   tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

c.   tending to identify co-conspirators, criminal associates, or others involved in importation of cocaine and methamphetamine, or some other federally controlled substance, from Mexico into the United States;

d.   tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e.   tending to identify the user of, or persons with control over or access to, the **Target Device 2**; and/or

f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.

**AFFIDAVIT**

I, Special Agent Niza Gonzalez, being duly sworn, hereby state as follows:

**INTRODUCTION**

1.     I submit this affidavit in support of an application for a warrant to search the following electronic devices:

Seizure No.  2026250300020401 -0005 ("**Target Device 1**")

2026250300020402 -0001 ("**Target Device 2**")

as further described in Attachment A-1 and A-2, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 952, 960, and 963 as further described in Attachment B.  The requested warrant relates to the investigation and prosecution of Daniel CHAIDEZ and Marc CHAIDEZ ("Defendants") for importing approximately 0.92 kg of methamphetamine and 1.22 kg of cocaine from Mexico into the United States. **Target Device 1** and **Target Device 2** are currently in custody of Homeland Security Investigations and located at 2051 N Waterman Ave, Suite 100, El Centro, California.

2.     The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for **Target Device 1** and **Target Device 2**, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

**BACKGROUND**

3.     I have been employed as a Special Agent with Homeland Security Investigations (HSI) since December of 2023. I am currently assigned to the HSI Office of the Assistant Special Agent in Charge, in Calexico, California. Prior to my tenure as an HSI Special Agent I was employed as a Customs and Border Protection Officer. In that capacity, I was responsible for conducting inspections of persons, vehicles and cargo entering the United States, identifying immigration and customs violations, and

interdicting individuals attempting to smuggle contraband and undocumented individuals across the border. This experience has provided me with training and practical experience in identifying indicators of narcotics smuggling. I am a graduate of the Federal Law Enforcement Training Center Criminal Investigator Training Program (CITP) and Homeland Security Investigations Special Agent Training (HSISAT) in Glynco, Georgia.

4.    During my tenure with HSI, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California.  Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico Ports of Entry.

5.    I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular telephones.  A common tactic utilized by narcotics traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles or on persons entering the United States at Ports of Entry such as the Calexico Ports of Entry, San Ysidro Port of Entry, the Otay Mesa Port of Entry, and the Tecate Port Of Entry.  With respect to the importation of narcotics in this manner, I am aware that narcotics traffickers in Mexico frequently communicate with the individual responsible for importing the concealed narcotics into the United States.  These communications can occur before, during and after the narcotics are imported into the United States.  For example, prior to the importation, narcotics traffickers frequently communicate with the transporter(s) regarding arrangements and preparation for the narcotics importation.  When the importation is underway, narcotics traffickers frequently communicate with the transporter(s) to remotely monitor the progress of the narcotics, provide instructions and warn accomplices about law enforcement activity.  When the narcotics have been imported into the United States, narcotics traffickers may communicate with the transporter(s) to provide further instructions regarding the delivery

of the narcotics to a destination within the United States.

6.     Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the importation of narcotics may yield evidence:

a.     tending to indicate efforts to import controlled substances from Mexico into the United States;

b.     tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

c.     tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States;

d.     tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e.     tending to identify the user of, or persons with control over or access to, **Target Device 1** and **Target Device 2**; and/or

f.     tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

### FACTS SUPPORTING PROBABLE CAUSE

7.     On April 23, 2026, at approximately 7:28 PM, Daniel CHAIDEZ,

("CHAIDEZ"), a United States citizen, applied for entry into the United States from Mexico through the West Port of Entry in Calexico, California through vehicle primary lane #4. CHAIDEZ was the driver, **and registered owner** of a 2024 Chevrolet Camaro ("the vehicle") bearing California license plates. D. CHAIDEZ was accompanied by his brother, Marc Anthony CHAIDEZ (M. CHAIDEZ). A Customs and Border Protection Officer (CBPO) assigned to vehicle primary lane #4 received a negative Customs declaration. The CBPO noticed D. CHAIDEZ avoiding eye contact during his inspection.

8. The CBPO asked D. CHAIDEZ if anyone had requested him to bring anything into the United States or take anything to Mexico, and if the vehicle had been out of his possession in the last three days, D. CHAIDEZ responded no to the first two questions. He indicated in response to the third question that his brother-in-law had driven the vehicle in the past three days. The vehicle was referred for secondary inspection.

9. A Canine Enforcement Officer (CEO) was conducting canine operations in secondary inspection with assigned Human Narcotics Detector Dog (HNDD) and performed a screen of the vehicle. During the screen of the vehicle the HNDD alerted to the presence of trained odors at the vehicles glove box area. The CEO advised the X-ray operator and other CBPOs of the alert.

10. Further inspection of the vehicle resulted in the discovery of two vacuum sealed packages and one vacuum sealed package with cardboard paper inside concealed under the passenger airbag compartment. The two packages weighed 0.92 kg, samples of the substance contained within the package field tested positive for characteristic of methamphetamine. The remaining package weighed 1.22 kilograms, samples of the substances contained within the packages field tested positive for the characteristics of cocaine.

11. D. CHAIDEZ and M. CHAIDEZ were placed under arrest at approximately 10:56 PM.

12. D. CHAIDEZ and M. CHAIDEZ were arrested and charged with a violation

of Title 21, United States Code, 952 and 960, importation of a controlled substance.

13.   During a post-*Miranda* interview, Defendants were individually presented with **Target Device 1 and Target Device 2** and identified the **Target Device 1** (D. CHAIDEZ) and **Target Device 2** (M. CHAIDEZ) as belonging to them, as denoted in parenthesis.



*One package of cocaine discovered in the vehicle.*



*Two bricks of methamphetamine discovered in the vehicle.*



*Area under passenger side airbag containing contraband.*

14.    Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of **Target Device 1** and **Target Device 2**.  In light of the above facts and my experience and training, there is probable cause to believe that Defendants were using the **Target Device 1** and **Target Device 2** to communicate with others to further the importation of illicit narcotics into the United States.  Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics.

15.    Based upon my training and experience, it is also not unusual for individuals, such as Defendants, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search **Target Device 1** and **Target Device 2** for data beginning on April 9, 2026, up to and including April 23, 2026.

**METHODOLOGY**

16.    It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure

environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

17. Following the issuance of this warrant, I will collect **Target Device 1** and **Target Device 2** and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

18. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

19. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

## CONCLUSION

20. Based on the facts and information set forth above, I submit there is probable cause to believe that a search of **Target Device 1** and **Target Device 2** will yield evidence of Defendant's violations of Title 21, United States Code, Sections 952, 960 and 963. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search

the item described in Attachment A-1 and A-2, and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Special Agent Niza Gonzalez
Homeland Security Investigations

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 14th day of May, 2026.

_____
Honorable Steve B. Chu
United States Magistrate Judge